IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| GREGORY GOODWIN, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 05-CV-161 (Erie) |
| | ) | |
| v. | ) | Judge Maurice B. Cohill, Jr. |
| | ) | |
| ACCURIDE ERIE, L.P., | ) | ELECTRONIC FILING |
| | ) | |
| Defendant. | ) | |

## DEFENDANT'S BRIEF SUPPORTING MOTION FOR SUMMARY JUDGMENT

NOW COMES Defendant Accuride Erie, L.P. ("Accuride" or "Company"), by and through its counsel, and files the following Brief Supporting Motion for Summary Judgment.

## I.    INTRODUCTION

Plaintiff Gregory Goodwin ("Goodwin") was terminated because Accuride, after conducting an investigation, concluded he had engaged in a work slowdown, and encouraged others to do so, in violation of the Company's work rules and in violation of the Company's labor agreement with the union at Accuride's Erie plant.  The arbiter hearing Goodwin's grievance under the labor agreement for his termination concluded: (1) that Accuride had conducted a "thorough and fair" investigation; (2) that Goodwin did engage in conduct that violated Accuride's plant rules and resulted in his discharge; and (3) that there was no disparate treatment of Goodwin vis-à-vis the black female who Goodwin claims is the comparator supporting his reverse race and sex discrimination claims.  (SOF ¶¶ 47-49).[1]

After investigating Goodwin's claim, the U.S. Equal Employment Opportunity Commission ("EEOC") similarly concluded it was "unable to conclude that [Goodwin's] race

---

[1]  "(SOF ¶ __)" refers to the paragraphs of Defendant's Concise Statement of Material Facts Supporting Motion for Summary Judgment filed with this Brief that support the stated contention.

and/or sex were factors in the alleged harms." (SOF ¶ 62). The Pennsylvania Human Relations Commission ("PHRC") likewise informed Goodwin that it was "unable to conclude that the information obtained establishes violations of the statutes." (SOF ¶ 63).[2]

Despite the findings of the arbiter, the EEOC, and the PHRC, three independent and impartial entities with recognized experience in considering such claims, Goodwin persists in claiming that he, a white male working in a facility that is overwhelmingly white and male, was unlawfully terminated by a group of decision makers, who also were all white and predominantly male, because he is white and male. Specifically, Goodwin claims he was unlawfully terminated because of his race and sex under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. ("Title VII") and the Pennsylvania Human Relations Act, 43 Pa. C.S.A. § 951 et seq. ("PHRA").

Goodwin cannot prevail, and his claims should be dismissed for a number of reasons. Goodwin cannot establish a prima facie case of reverse race or sex discrimination because: (1) there is no evidence that Accuride is "that unusual employer who discriminates against the majority"; and (2) the evidence of record shows Goodwin's purported comparator was not similarly situated to Goodwin. Further, assuming arguendo that Goodwin can establish a prima facie case of reverse race or sex discrimination, there is no evidence of record showing Accuride's articulated legitimate, nondiscriminatory reason for Goodwin's termination was pretext for unlawful discrimination. Indeed, the evidence of record militates against a finding of pretext. There is no dispute of material fact, Accuride is entitled to judgment as a matter of law, and summary judgment should be granted in favor of Accuride dismissing all of Goodwin's claims.

---

[2]  Goodwin also filed a Charge with the National Labor Relations Board ("NLRB") over his termination. The NLRB Charge was withdrawn. (SOF ¶¶ 58-60).

## II.    ARGUMENT

### A.    Legal Standard For Summary Judgment Pursuant To Fed. R. Civ. P. 56

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); Cox v. Acme Health Serv., Inc., 55 F.3d 1304, 1308 (7th Cir. 1995). A genuine issue of material fact exists for trial when, in viewing the record and all reasonable inferences drawn from it in a light most favorable to the non-movant, a reasonable jury could return a verdict for the non-movant. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986); Eiland v. Trinity Hosp., 150 F.3d 747, 750 (7th Cir. 1998).

Accuride bears the burden of establishing that there exists no genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553 (1986); Hedberg v. Indiana Bell Tel. Co., 47 F.3d 928, 931 (7th Cir. 1995). Where the non-moving party bears the burden of proof on a particular issue at trial, the moving party's initial burden can be met simply by pointing out to the district court that there is an absence of evidence to support the non-moving party's case. McCadden v. Nat'l R.R. Passenger Corp. a/k/a Amtrak, No. 01-4286, 2002 U.S. Dist. LEXIS 22249 at * 2-3 (E.D. Pa. Oct. 24, 2002) (citing Celotex, 477 U.S. at 322). If Accuride meets this burden, Goodwin must set forth specific facts that demonstrate the existence of a genuine issue for trial. Fed. R. Civ. P. 56(e); Celotex, 477 U.S. at 324. Rule 56(c) mandates the entry of summary judgment against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and in which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322. A scintilla of evidence in support of Goodwin's position is not sufficient to successfully oppose a summary

3

judgment motion; "there must be evidence on which the jury could reasonably find for [Goodwin]." Anderson, 477 U.S. at 250.

**B.      The McDonnell Douglas Burden-Shifting Analysis Applies To Goodwin's Claims**

The burden-shifting analysis established in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), is the appropriate analysis for summary judgment motions in cases of alleged reverse discrimination on the basis of race and sex.[3] Turgeon v. Marriott Hotel Servs., Inc., No. 99-4401, 2000 U.S. Dist. LEXIS 18688 at *16 (E.D. Pa. Dec. 27, 2000); Kappes v. E.I. DuPont De Nemours & Co., Inc., No. 97-443-SLR, 1999 U.S. Dist. LEXIS 3580 at * 13-14 (D. Del. Mar. 18, 1999), aff'd 275 F.3d 36 (3d Cir. 2001).[4] Consequently, each of Goodwin's discrimination claims should be analyzed using the McDonnell Douglas analysis.

Under the McDonnell Douglas analysis, Goodwin bears the initial burden of establishing a prima facie case of discrimination by a preponderance of the evidence. If Goodwin establishes a prima facie case of discrimination, the burden shifts to Accuride to offer legitimate, nondiscriminatory reasons for the adverse employment action against Goodwin. St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 506-07 (1993).

After Accuride comes forward with legitimate, nondiscriminatory reasons for its actions, Goodwin can defeat a motion for summary judgment only by proffering evidence from which a fact finder could reasonably either (a) disbelieve Accuride's articulated legitimate reasons or (b) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of Accuride's actions. Fuentes v. Perskie, 32 F.3d 759, 764

---

[3]    There is no direct evidence of discrimination in the record. In the absence of direct evidence of discrimination, Goodwin must proceed under the burden-shifting paradigm of McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), and its progeny. Fullard v. Argus Research Lab., Inc., No. 00-509, 2001 U.S. Dist. LEXIS 7426 at * 7 (E.D. Pa. Jun. 7, 2001).

[4]    PHRA claims are assessed using the analytical framework developed for Title VII claims under McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), and its progeny. Clark v. Commonwealth of Pa., 885 F. Supp. 694, 714 (E.D. Pa. 1995).

(3d Cir. 1994). To discredit Accuride's proffered reason for his termination, Goodwin cannot simply show that Accuride's decision was wrong or mistaken because the factual dispute at issue is whether discriminatory animus motivated Accuride. McCadden, 2002 U.S. Dist. LEXIS 22249 at *6 (citing Fuentes, 32 F.3d at 765). What is at issue is the perception of the decision maker, not Goodwin's view of his own performance. McCadden, 2002 U.S. Dist. LEXIS 22249 at *6-7 (citing Billet v. CIGNA Corp., 940 F.2d 812, 825 (3d Cir. 1991)).

In responding to a motion for summary judgment, Goodwin cannot rest upon conclusory allegations. Dlugos v. Eastman Kodak Co., No. 95-1525, 1996 U.S. Dist. LEXIS 21891 at * 17 (W.D. Pa. Sep. 5, 1996) (citing Lujan v. Nat'l Wildlife Fed., 497 U.S. 871, 888 (1990)).

**C.    Goodwin Cannot Establish A Prima Facie Case Of Reverse Race Or Sex Discrimination Or That The Reason For His Discharge Was Pretext For Race Or Sex Discrimination; Consequently, Goodwin's Reverse Race And Sex Discrimination Claims Should Be Dismissed**

> **1.    Goodwin cannot establish a prima facie case of reverse race or sex discrimination because there is no evidence Accuride "is that unusual employer who discriminates against the majority," and there is no evidence that Goodwin was treated differently than a similarly situated employee.**

In order to establish a prima facie case of race and sex discrimination, Goodwin must show: (1) he is a member of a protected class; (2) he was qualified for his position; (3) he was discharged; and (4) similarly situated employees who are not members of the protected class were treated more favorably. Moorer v. Verizon Comm., Inc., No. 03-1265, 2005 U.S. Dist. LEXIS 39783 at * 15-16 (W.D. Pa. Oct. 27, 2005).

"In reverse discrimination cases, courts must modify the first prong of the McDonnell Douglas test." Kappes, 1999 U.S. Dist. LEXIS 3580 at * 14-15. The Kappes court explained:

> Although "Title VII . . . prohibits racial and gender discrimination against all people, including members of the majority," McDonald v. Santa Fe Transp. Co., 427 U.S. 273, 280, 49 L. Ed. 2d 493, 96 S. Ct. 2574 (1976), courts in this Circuit have held that plaintiffs alleging reverse discrimination also must show "background circumstances supporting the suspicion that the defendant is that unusual employer who discriminates against the majority." Davis v. Sheraton Soc'y Hill Hotel, 907 F. Supp. 896, 899 (E.D. Pa. 1995). Background circumstances that support an inference of reverse discrimination fall into two categories: (1) evidence that the employer has "some reason or inclination" to discriminate against the majority and (2) any other evidence that raises an inference of reverse discrimination. See Harel v. Rutgers, the State Univ., 5 F. Supp. 2d 246, 265 (D.N.J. 1998); Murphy, 1999 WL 31207, at *12.

Kappes, 1999 U.S. Dist. LEXIS 3580 at * 14-15.

To satisfy the fourth element of a prima facie case of reverse race and sex discrimination, Goodwin must establish that similarly situated non-protected persons were treated more favorably than he was, i.e. that similarly situated non-Caucasian or female employees were not terminated by Accuride for the same conduct causing Goodwin's termination. Dill v. Runyon, No. 96-3584, 1997 U.S. Dist. LEXIS 4355 at * 12-13 (E.D. Pa. Apr. 3, 1997). The Dill court explained the meaning of "similarly situated" as follows:

> To be deemed "similarly situated," the individuals with whom a plaintiff seeks to be compared must "have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." Anderson, 868 F. Supp. at 745 (quoting Mitchell v. Toledo Hosp., 964 F.2d 577, 583 (6th Cir. 1992)). Further, the proposed analogues must be similarly situated in all "material respects." Perkins v. Brigham & Women's Hosp., 78 F.3d 747, 751 (1st Cir. 1996); see also, Pierce v. Commonwealth Life Ins. Co., 40 F.3d 796, 803 (6th Cir. 1994) (stating that "in order for two

> or more employees to be considered similarly-situated . . . the plaintiff must prove that all of the relevant aspects of his employment situation are nearly identical to those of the employees who he alleges were treated more favorably" (citations and internal quotations omitted)); <u>Mazzella v. RCA Global Communications, Inc.</u>, 642 F. Supp. 1531, 1546 (S.D.N.Y. 1986), <u>aff'd</u> without op., 814 F.2d 653 (1987) (stating that "for evidence relating to other employees to be relevant, those employees must be situated similarly to plaintiff").

<u>Dill</u>, 1997 U.S. Dist. LEXIS 4355 at * 12-13.

Goodwin cannot establish <u>prima</u> <u>facie</u> cases of reverse race or sex discrimination because there is no evidence Accuride discriminates against the majority or that Goodwin was treated differently than a similarly situated employee.

> **(a)** **There is no evidence to show Accuride is that unusual employer who discriminates against the majority, i.e. Caucasian males.**

Goodwin has adduced no evidence that Accuride "is that unusual employer who discriminates against the majority." <u>Kappes</u>, 1999 U.S. Dist. LEXIS 3580 at * 14-15 (quoting <u>Davis v. Sheraton Soc'y Hill Hotel</u>, 907 F. Supp. 896, 899 (E.D. Pa. 1995)). There is no evidence that Accuride has "some reason or inclination" to discriminate against the white male majority of its employees or any other evidence that raises an inference of reverse discrimination. <u>Id.</u> Indeed, the evidence militates against a finding of discrimination against white males. When Goodwin was terminated, the overwhelming majority of Accuride's workforce was white and male: 121 white males, 11 black males, 3 white females, 2 black females. (SOF ¶ 80). Employee terminations during Goodwin's tenure give no indication of discrimination against white males. The six terminations included four Caucasian males and two black males. (SOF ¶ 79). Blacks, who make up only .09% of the workforce but constituted 33% of the terminations, therefore, are being discharged at a rate three to four times their expected

rate of discharge.[5]  The management group that decided to terminate Goodwin was comprised of four white males and one white female.  (SOF ¶¶ 29-31).

Adverse employment action taken by members of the majority race and sex in the workplace against another member of the majority provides no evidence of an inclination towards, and raises no inference of, reverse discrimination.  Goodwin, thus, has adduced no evidence that Accuride discriminates against the majority.  Consequently, Goodwin cannot establish prima facie cases of reverse race or sex discrimination and his claims should be dismissed.

### (b)   There is no evidence to show Goodwin was treated differently than a similarly situated non-Caucasian, female employee.

Goodwin's discrimination claims are founded entirely on the alleged difference in treatment of Goodwin and an African-American female, Sabrina Gore ("Gore").  Goodwin claims, specifically, that Gore engaged in the same conduct that Goodwin was accused of and that resulted in his termination – "a work stoppage slowdown" – but Gore received only a one-day suspension.  (SOF ¶ 72).  Goodwin's strained attempts to portray Gore's conduct and her resulting discipline as similar to Goodwin's conduct and resulting discipline must fail.

The allegedly similar conduct by Gore was a single incident that occurred on March 13, 2004, described by Accuride as follows:

> Our investigation established that on or about March 13, a dispute arose concerning your work assignment near the beginning of your shift.  You left your assigned work area, without authorization, for approximately on hour while you discussed the dispute with your supervisor, union representative and other employees in the area.  Later you were sent home [by your supervisor] because of your abusive response to your supervisor's directive to return to your assigned work station.

---

[5]   No statistically meaningful comparison can be made for females as their presence in the workforce is too low (5 out of 137 for .03%) to show any meaningful conclusions.

(SOF ¶ 73).  Accuride did not accuse Gore of a work slowdown.  Accuride concluded Gore's

conduct violated the Rules of Conduct, but not Rule 11.  Gore's disciplinary letter further stated:

> The Erie Plant Rules of Conduct prohibit "failure to follow
> directions or instructions."  The Rules of Conduct also prohibit
> "absence from your assigned job or work area without permission."
> Your conduct on or about March 13 violated these basic rules of
> acceptable behavior.
>
> It is imperative that employees at the Erie Plant follow the
> directions of supervisors and remain in their work areas unless
> authorized to leave.  If you disagree with a supervisor's directions,
> you must "work now and grieve later."  Future unauthorized
> absence from your area, failure to follow supervisor's instructions,
> or similar misconduct will result in additional discipline, up to and
> including termination of your employment.

(SOF ¶ 73).

Goodwin's conduct and violations were quite different from Gore's.  Rather than a

single incident of leaving an assigned work area without authorization and being abusive to a

supervisor, Goodwin was determined by Accuride to have engaged in a pattern of unacceptable

conduct over a period of time, i.e. participating in a work slowdown.  Accuride concluded:

> Our investigation determined that there was a slowdown in the Erie
> Plant that included activities such as efforts by employees to fail to
> work to the best of their ability; to delay startups; to slow down
> robot speeds; and to stop or limit production equipment from
> operating.  Our investigation indicted that you participated in the
> slowdown by, among other conduct, repeatedly telling other
> employees to "fuck the Company"; delaying startups; slowing
> down robot speeds; and slowing production by distracting workers.
> Your conduct violated Article 42 of the Agreement and Rule 11 of
> the Rules of Conduct.

 (SOF ¶ 35).

Accuride and the International Union, United Automobile, Aerospace and

Agricultural Implement Workers of America, Local 1186 ("the Union") were parties to a

collective bargaining agreement effective September 1, 2003 through August 31, 2007 ("Labor

Agreement").  (SOF ¶ 7).  Goodwin filed a grievance for his termination pursuant to the Labor Agreement.  The grievance was adjudicated by an arbitrator.

The weight to be given to the arbitral decision is within this Court's discretion. Relevant factors in this Court's consideration include the degree of procedural fairness in the arbitral forum, the adequacy of the arbitral record of the issue in the judicial proceedings, and the special competence of particular arbitrators.  McDonald v. City of W. Branch, Mich., 466 U.S. 284, 292 n. 13 (1984).  Where an arbitral determination gives full consideration to an employee's rights, a court may properly accord it great weight.  This is especially true where the issue is solely one of fact, specifically addressed by the parties and decided by the arbitrator on the basis of an adequate record.  Id.  The record of the arbitration hearing in evidence shows the opportunity by Goodwin to adequately present his case, including examination and cross-examination of witnesses and the introduction of exhibits.  (SOF ¶¶ 44-50).  The arbiter, Donald O'Connor, is an experienced labor and employment lawyer.  (SOF ¶ 50).  The issues before the arbiter, and relevant to this case, were issues of fact  –  whether Accuride terminated Goodwin for cause for engaging in a work slowdown and whether Goodwin suffered disparate treatment as compared to Gore.  (SOF ¶ 44-50).  Consequently, this Court should give great weight to the arbitral decision which decided the same issue presented to this Court.

The Union argued to the arbiter who heard the grievance that there was a disparity in the treatment of Goodwin and Gore.  Contrary to Goodwin's and the Union's position, the arbiter found "[a]s the rule violations and the conduct involved are quite different, I cannot conclude there was disparate treatment" of Goodwin and Gore.  (SOF ¶ 49).

The only alleged comparator supporting Goodwin's reverse race and sex discrimination claims is Gore.  The evidence shows Goodwin and Gore were not similarly

situated. A fact finder, the arbiter, agreed that the evidence shows Goodwin and Gore were not similarly situated. This was the same conclusion that was reached by the EEOC and PHRC at the conclusion of their investigations. Because Goodwin cannot point to disparate treatment of a similarly situated employee who is not in his protected class, Goodwin cannot establish a prima facie case of race or sex discrimination and his claims should be dismissed.

### 2. Goodwin cannot show Accuride's articulated reason for his termination was a pretext for race or sex discrimination.

Goodwin has adduced no evidence showing Accuride's articulated reason for his termination was pretext for race or sex discrimination. To the contrary, ample evidence of record shows Accuride terminated Goodwin for a legitimate, nondiscriminatory reason, i.e. his engaging in a work slowdown in violation of Accuride's Rules of Conduct and the Labor Agreement. (SOF ¶¶ 32-36). Indeed, a fact finder has already concluded Accuride acted according to its articulated reason for Goodwin's termination. After an evidentiary hearing and argument, the arbiter concluded (1) that Accuride had conducted a "thorough and fair" investigation; (2) that Goodwin "did purposely slow equipment down in violation of Rule 11"; and (3) that there was no disparate treatment of Goodwin and Gore. (SOF ¶¶ 47-49).

Goodwin argued at his arbitration hearing that he did not engage in a work slowdown, and he may make such an argument in this case. But even if he could prove he did not engage in a work slowdown, he cannot prevail. To discredit Accuride's proffered reason for his termination, Goodwin cannot simply show that Accuride's decision was wrong or mistaken because the factual dispute at issue is whether discriminatory animus motivated Accuride. McCadden, 2002 U.S. Dist. LEXIS 22249 at *6 (citing Fuentes, 32 F.3d at 765). There is no evidence that Accuride was not consistent or sincere in its stated reason for Goodwin's termination. Goodwin himself admitted that no Accuride manager ever told him his termination

was due to any reason other than his participation in a work slowdown. (SOF ¶ 38). Because Goodwin cannot point to any evidence showing Accuride terminated Goodwin as a pretext for race or sex discrimination, his claims should be dismissed.

      **3.**      **Ample evidence militates against a finding of discriminatory pretext by Accuride.**

           **(a)**      **Goodwin's inconsistent allegations as to the reason for his termination in three different venues shows Goodwin undermines the credibility and sincerity of his claims of race and sex discrimination.**

Goodwin sought relief from his termination in three different venues and in each venue made different claims as to the reason for his discharge. Goodwin's Grievance memorandum supporting his Grievance under the Labor Agreement claims the difference in his discipline and the discipline of Gore was "an unfair practice, a selective unfair labor practice and harassment." (SOF ¶¶ 41-42). Goodwin makes no mention of discrimination on the basis of race or sex in his Grievance or his supporting memorandum. (SOF ¶ 43).

Goodwin filed a National Labor Relations Board Charge Against Employer ("NLRB Charge") on July 30, 2004 in connection with his termination. In the NLRB Charge, Goodwin claims Accuride "suspended . . . Goodwin and others . . . because they engaged in concerted activities with other employees of said employer for the purpose of collective bargaining and mutual aid and protection and in order to discourage membership in said labor organization." (SOF ¶ 58). Goodwin makes no mention of discrimination on the basis of race or sex.

Finally, on July 28, 2004, Goodwin completed an EEOC Questionnaire claiming discrimination, but when asked the alleged reasons for his treatment, Goodwin stated, <u>inter alia</u>, he was "treated differently because Dave Shingledecker (supervisor) and Ross Russo

(supervisor) do not like me."  (SOF ¶ 65).  He thus admitted to the EEOC and PHRC that his termination was based on alleged personal animosity, not his race or sex.[6]  Such a reason does not violate Title VII or the PHRA.  Garvey v. Dickinson Coll., 775 F. Supp. 788, 796-97 (M.D. Pa. 1991).

Goodwin's inconsistent claims as to the reason for his termination, in different venues, indicate Goodwin is merely seeking any forum for redress of his termination.  His inconsistent claims, however, undermine his assertions of race and sex discrimination in this Court.

**(b)    Gore, the black female allegedly treated differently than Goodwin, was repeatedly disciplined by Accuride for her different offensive conduct.**

Gore was not implicated in Accuride's investigation of a work slowdown.  Gore was not accused of or disciplined for engaging in a work slowdown because Accuride never suspected her of engaging in a work slowdown.  Gore was, however, disciplined for other conduct and received suspensions during the period of time from Accuride's suspicion of a work slowdown through Goodwin's termination.

Pinson became suspicious of a work slowdown in the Erie plant in the spring of 2004 and conducted an investigation.  (SOF ¶¶ 14-17, 19, 21, 23, 25).  The investigation resulted in Goodwin's termination on July 23, 2004.  (SOF ¶ 34).  On March 13, 2004, Gore was sent home by her supervisor and suspended for a day after a dispute about her work assignment resulted in her leaving her work area without authorization and being abusive to her supervisor.  (SOF ¶¶ 72-73).  The March 2004 suspension was Gore's first discipline by Accuride.  (SOF ¶ 74).  On June 25, 2004, Gore was disciplined with a three-day suspension for an incident with a

---

[6]    The testimony of the Union President, Gary Montroy, was consistent with the absence of discriminatory motivation of Accuride.  Montroy testified Accuride "don't tolerate anything racial."  (SOF ¶ 86).

coworker that resulted in the posting of a racially charged message on one of the machine lines. (SOF ¶¶ 75-76).[7]

Gore's discipline shows she enjoyed no special treatment due to her race or sex and that Accuride dispensed discipline under the policies commensurate with Gore's offenses without regard to race or sex. Accuride's repeated discipline of Gore is inconsistent with Goodwin's accusations of discrimination and further supports dismissal of Goodwin's claims.

> **(d)** **Employees other than Goodwin, including the former Union President, were disciplined in connection with Accuride's investigation of a work slowdown in the Erie plant, evidencing the legitimate, nondiscriminatory reason for Goodwin's termination.**

Accuride's investigation of the work slowdown in the Erie plant resulted in the discipline of employees other than Goodwin, including the termination of the Union President. The Union President at the time, Doug Ferguson ("Ferguson"), was terminated for instigating and supporting the work slowdown in violation of Article 42 of the Labor Agreement and Rule 11 of the Rules of Conduct. (SOF ¶¶ 52, 54-55). Employee Ed Gatti ("Gatti") was also issued a two-week suspension as a result of the slowdown investigation. (SOF ¶ 56). Both Ferguson and Gatti are Caucasian males. (SOF ¶¶ 53, 57). The discipline of multiple employees reflects how seriously Accuride took the slowdown and reinforces the conclusion that Accuride acted for a legitimate, nondiscriminatory reason. No reasonable juror could conclude that Accuride would conduct an extensive investigation, terminate Goodwin and the Union President, and suspend a third employee because it was motivated by discriminatory animus towards white males when the workforce and decision makers were overwhelmingly white males. Accuride's

---

[7]  Gore was suspended for her conduct after Goodwin's termination as well. On April 12, 2005, Gore was disciplined with a three-day suspension for an argument with a coworker that occurred on March 24, 2005. (SOF ¶¶ 77-78).

conduct is consistent with the lack of any evidence of reverse race or sex discrimination and further supports dismissal of Goodwin's claims.

**III.    <u>CONCLUSION</u>**

The evidence of record shows Goodwin cannot establish a <u>prima</u> <u>facie</u> case of reverse race or sex discrimination. The record is further devoid of any evidence that Accuride's termination of Goodwin for engaging in a work slowdown was a pretext for reverse race or sex discrimination. The arbiter, the EEOC, and the PHRC saw no race or sex discrimination in Accuride's actions. This Court should reach the same conclusion and grant summary judgment in favor of Accuride dismissing all of Goodwin's claims.

Respectfully submitted,

JACKSON LEWIS LLP


By: <u>*/s/Mark Goldner*</u>
    Martin J. Saunders
    PA ID #19940
    saunderm@jacksonlewis.com
    Mark Goldner
    PA ID #75938
    goldnerm@jacksonlewis.com
    One PPG Place, 28th Floor
    Pittsburgh, PA 15222
    Phone (412) 232-0404
    Fax (412) 232-3441

    ATTORNEYS FOR DEFENDANT

Dated: August 31, 2006

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on August 31, 2006, I electronically filed the foregoing

*Defendant's Brief Supporting Motion for Summary Judgment* with the Clerk of Court using the

CM/ECF system which will send notification of such filing to the following:

Joseph H. Chivers, Esquire
312 Boulevard of the Allies, Suite 600
Pittsburgh, PA 15222

*/s/ Mark Goldner* _____