# Exhibit F

1

1    IN THE UNITED STATES DISTRICT COURT FOR THE
              WESTERN DISTRICT OF PENNSYLVANIA
2
                        _ _ _ _
3
      GREGORY GOODWIN                )
4                                    )
                                     )
5                                    )
                                     )
6                 Plaintiff,         )
                                     )
7                -vs-                )        Civil Action
                                     )        No. 05-161
8     ACCURIDE ERIE, LP              )
                                     )
9                                    )
                                     )
10                                   )
            Defendant.               )        CERTIFIED TRANSCRIPT
11

12
                        _ _ _ _
13
            DEPOSITION OF:  MICHAEL PINSON
14
                        _ _ _ _
15

16           DATE:     June 28, 2006
                       Wednesday, 9:00 a.m.
17

18           LOCATION:   150 East 8th Street
                         Erie, PA
19

20           TAKEN BY:   Plaintiff
                         Gregory Goodwin
21

22           REPORTED BY:   Cynthia A. Hawley
                            Notary Public
23                          AKF Reference No. CH95362C

24

25



1    been on the job about a month.

2              And he came to me.  He didn't

3    understand.  We were, they were down almost the

4    entire shift.  Didn't, wasn't sure how to

5    account for it.  He didn't understand what the

6    equipment was doing.  Dave had to come in that

7    morning and fix it and pulled up the MAC MAN

8    report and looked at it.

9              And Dave was our expert in terms of

10   interpreting that.  And he was puzzled by some

11   of the moves.  But we didn't make any

12   conclusions one way or the other about what

13   that might have meant.

14   Q.   Eventually you must have made some conclusions

15        about what those moves meant?

16   A.   I don't think we necessarily did.

17   Q.   Well then why did you terminate Mr. Goodwin?

18   A.   We terminated Mr. Goodwin because he was

19        slowing down the robot speeds, because he's a

20        disruptive force on the shop floor telling

21        employees let's fuck Accuride, giving the

22        junior employees a hard way to go about signing

23        up for overtime.

24   Q.   Are there any reasons other than the reasons

25        given in your letter, which was previously

1    marked in Mr. Goodwin's deposition as

2    Deposition Exhibit 18?  I would assume those

3    are the reasons Mr. Goodwin was terminated?

4  A.   Yes.

5  Q.   Certainly one of those reasons in there is

6       contributing to a work slow down/stoppage,

7       correct?

8  A.   Yes.

9  Q.   And you've already said that the production

10      data in and of itself doesn't really tell you

11      whether there was or was not a work slow down,

12      correct?

13 A.   Correct.

14 Q.   Neither for that matter does the MAC MAN data

15      regarding moves made on the lathe, isn't that

16      right?

17 A.   Just tells you what moves were made.

18 Q.   Yeah.  Doesn't tell you whether that amounted

19      to a slow down or stoppage, does it?

20 A.   No.

21 Q.   And also given the fact that neither you nor

22      anybody else apparently in management bothered

23      to ask Mr. Goodwin what reasons, if any, he had

24      for those moves, even to this day.  You don't

25      know what reasons Mr. Goodwin may have had for

1      didn't you?

2  A.    Yes, I've seen the production data.

3  Q.    I don't know if you remember, but I mean,

4        certainly you can look at the production data

5        and see that on the day in question back in

6        March of 2004 when Mr. Bruno felt compelled to

7        send Ms. Gore home, the result was that they

8        could only run one of the two lines?

9                    MR. SAUNDERS:  Objection.  That's not

10       the testimony.

11  BY MR. CHIVERS:

12  Q.    Do you know that, sir?

13  A.    No, I do not know that.

14  Q.    You could look at the production data and

15        determine that, couldn't you?

16  A.    I spoke to Jerry Bruno.  Jerry said they got

17        somebody from somewhere else in the plant and

18        they ran both lines.

19  Q.    Hmm.  Okay.  All right.  Did you bother to look

20        at -- you just accepted what Mr. Bruno said?

21  A.    There were wheels produced on both lines that

22        night.

23  Q.    You've been able to determine that by looking

24        at the data yourself?

25  A.    Yes.

1  Q.   Okay.  Anyway, taking a look at this Deposition

2       Exhibit 18 from Mr. Goodwin's deposition, fair

3       to say, sir, that all those reasons given there

4       were integral to the termination?

5  A.   I think so, yes.

6  Q.   All right.  I'm going to take two minutes, talk

7       to my client.  Okay?

8  A.   All right.

9                      - - - -

10      (There was a discussion off the record.)

11                     - - - -

12            MR. CHIVERS:  I have no more

13      questions.

14                     - - - -

15               EXAMINATION

16                 - - - -

17  BY MR. SAUNDERS:

18  Q.   I just have two.  At the time that Mr. Goodwin

19       was discharged on July 23rd of '04 had you

20       received, did you know of the incident that

21       Mr. Russo testified this morning to concerning

22       the extended break?

23  A.   Yes.  I was aware of that.

24  Q.   And had you received the, had you met and

25       talked to a coworker of Mr. Goodwins by the

33

COMMONWEALTH OF PENNSYLVANIA )    CERTIFICATE
COUNTY OF ERIE                 )    SS:

I, Cynthia A. Hawley, a Court Reporter and
Notary Public in and for the Commonwealth of
Pennsylvania, do hereby certify that the witness,
MICHAEL PINSON, was by me first duly sworn to testify
to the truth; that the foregoing deposition was taken
at the time and place stated herein; and that the
said deposition was recorded stenographically by me
and then reduced to printing under my direction, and
constitutes a true record of the testimony given by
said witness.

I further certify that the inspection, reading
and signing of said deposition were NOT waived by
counsel for the respective parties and by the
witness.

I further certify that I am not a relative or
employee of any of the parties, or a relative or
employee of either counsel, and that I am in no way
interested directly or indirectly in this action.

IN WITNESS WHEREOF, I have hereunto set my hand
and affixed my seal of office this 17th day of July,
2006.

_____
Notary Public

COMMONWEALTH OF PENNSYLVANIA
Notarial Seal
Cynthia A. Hawley, Notary Public
City Of Erie, Erie County
My Commission Expires June 30, 2009
Member, Pennsylvania Association of Notaries

Pittsburgh, PA
412-261-2323

Erie, PA
814-453-5700

